UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PURSUIT OPPORTUNITY FUND I MASTER LTD.; | : | Civil Action |
| PURSUIT OPPORTUNITY FUND I, L.P.; and | : | |
| PURSUIT OPPORTUNITY FUND I, LTD. | : | No. _____ |
| | : | |
| v. | : | |
| | : | |
| CLARIDGE ASSOCIATES LLC; | : | |
| JAMISCOTT, LLC; | : | |
| LESLIE SCHNEIDER and LILLIAN SCHNEIDER | : | NOVEMBER 15, 2019 |

## COMPLAINT

The Plaintiffs, Pursuit Opportunity Fund I Master, Ltd., Pursuit Opportunity Fund I, L.P. and Pursuit Opportunity Fund I, Ltd. hereby assert this action and allege as follows:

### PARTIES

1. The Plaintiff Pursuit Opportunity Fund I Master, Ltd. ("POF Master") is a limited liability company organized under the laws of the Cayman Islands, with a principal place of business in Greenwich, Connecticut.

2. The Plaintiff Pursuit Opportunity Fund I, L.P. ("POF") is a limited partnership organized under the laws of the State of Delaware, with a principal place of business in Greenwich, Connecticut.

3. The Plaintiff Pursuit Opportunity Fund I, Ltd. ("POF Offshore") is a fund organized under the laws of the Cayman Islands, with a principal place of business in Greenwich, Connecticut.

4. POF Master, POF and POF Offshore are collectively referred to herein as "the Plaintiffs."

5. The Defendant Claridge Associates LLC ("Claridge") is a Delaware limited liability

1

company, with a principal place of business in New York, New York.

6. The Defendant Jamiscott, LLC ("Jamiscott") is a Delaware limited liability company, with a principal place of business in New York, New York.

7. The Defendant Leslie Schneider ("Leslie") is an individual residing in the State of New York and London, England. Upon information and belief, Leslie is a member and/or manager of Claridge and Jamiscott, and directs, controls, supervises and dominates the operations of Claridge and Jamiscott, including decisions as to whether to assert lawsuits or claims on behalf of those entities.

8. The Defendant Lillian Schneider is an individual residing in the State of Florida.

9. Claridge, Jamiscott, Leslie and Lillian are collectively referred to herein as "the Defendants."

**JURISDICTION**

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this action involves a dispute between citizens of different states. The amount of controversy exceeds the sum of $75,000, exclusive of interest and costs.

11. This Court has jurisdiction over the Defendants pursuant to Conn. Gen. Stat. § 52-59b because, as to the causes of action set forth herein, the Defendants transacted business in Connecticut and committed tortious acts in Connecticut.

12. This Court has jurisdiction over the Defendants pursuant to Conn. Gen. Stat. § 52-59b because, as to the causes of action set forth herein, the Defendants committed tortious acts outside of Connecticut which caused harm in Connecticut.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14. In or around 2008, the Defendants became limited partners in an investment limited partnership known as the Pursuit Capital Management Fund I, L.P., ("PCM").

15. PCM was part of a "master-feeder" hedge fund structured amongst several distinct entities operating as limited partnerships. Each of these separate and distinct entities had its own rights, obligations, corporate structure, role, identity and purpose within the master-feeder hedge fund structure. In the case of PCM, it was an investor in a "master fund" known as Pursuit Capital Management Fund Master I, LTD.

16. The general partner of PCM was a Delaware limited liability company known as Pursuit Capital Management, LLC ("the Pursuit GP").

17. At all relevant times, the Pursuit GP was managed by two individuals, Anthony Schepis and Frank Canelas. Mr. Schepis and Mr. Canelas are also involved in the management and operation of the Plaintiffs herein.

18. On March 21, 2014, the Pursuit GP filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code, entitled *In re Pursuit Capital Management, LLC,* United States Bankruptcy Court, District of Delaware, 14-10610-LSS.

19. At the time that the Pursuit GP filed for bankruptcy, the Defendants herein were creditors of the Pursuit GP by virtue of a certain "Phase I" and "Phase II" arbitration award rendered in a certain American Arbitration Association arbitration entitled *Claridge Associates, LLC et al v. Pursuit Capital Management, LLC,* Case No. 13 512 M 01118 12 ("the Arbitration Award").

20. The Arbitration Award was entered against the Pursuit GP only, and was subsequently confirmed by the New York Supreme Court against the Pursuit GP only.

21. No court or other tribunal has ever found that any person or entity other than the Pursuit GP is liable to the Defendants in any way as a result of their limited partnership interest in PCM.

22. The Defendants herein have never held or purchased any interest in the Plaintiffs.

23. The Defendants herein have never loaned any funds to the Plaintiffs.

24. The Defendants herein have never transferred any funds to the Plaintiffs.

25. The Defendants herein have never invested any funds in or with the Plaintiffs.

26. The Defendants herein have never placed any funds or assets under the control or management of the Plaintiffs.

27. The Defendants herein have never entered into any contract or agreement with any of the Plaintiffs.

28. On or about August 8, 2015, the Defendants filed a still-pending lawsuit in the Connecticut Superior Court, Judicial District of Stamford-Norwalk at Stamford, entitled *Claridge Associates, LLC et al. v. Pursuit Partners, LLC et al*, FST-CV-15-6026099-S ("the Stamford Lawsuit"). The Stamford Lawsuit concerns claims by the Defendants related to their limited partnership interest in PCM and their Arbitration Award against the Pursuit GP.

29. The Defendants sued POF Master as part of the Stamford Lawsuit despite their knowledge that they had never (i.) held or purchased any interest in POF Master, (ii.) loaned any funds to POF Master, (iii.) transferred any funds to POF Master, (iv.) invested any funds in POF Master, (v.) placed any funds or assets under the control or management of POF Master, or (vi.) entered into any contract or agreement with POF Master.

30. On or about February 25, 2016, the Defendants filed another, still-pending lawsuit in the form of a bankruptcy adversary proceeding filed in the United States Bankruptcy Court, District of Delaware, entitled *Claridge Associates, LLC et al. v. Schepis, et al.*, 16-50083-LSS, ("the Delaware Lawsuit").

31. The Defendants sued all the Plaintiffs herein as part of the Delaware Lawsuit despite their knowledge that they had never (i.) held or purchased any interest in the Plaintiffs, (ii.) loaned any funds to the Plaintiffs, (iii.) transferred any funds to the Plaintiffs, (iv.) invested any funds with the Plaintiffs, (v.) placed any funds or assets under the control or management of the Plaintiffs, or (vi.) entered into any contract or agreement with the Plaintiffs.

32. Upon information and belief, at all relevant times the Defendants were aware that their claims asserted against the Plaintiffs in the Stamford Lawsuit and Delaware Lawsuit lacked probable cause and legal and factual basis.

33. Notwithstanding the foregoing, the Defendants nonetheless sued the Plaintiffs in an effort to force them to incur the time, expense, burden and inconvenience of defending multiple, duplicative and overlapping litigations. The Defendants did so, and continue to do so, in order to leverage and coerce settlement monies out of the Plaintiffs in light of the bankruptcy filed by the Pursuit GP, despite the fact that the Defendants are aware that there is no factual or legal basis for asserting that the Plaintiffs herein owe them any money.

34. Notwithstanding the foregoing, the Defendants nonetheless sued the Plaintiffs in an effort to interfere, inhibit and obstruct the Plaintiffs' ability to solicit investors or engage in other beneficial business relationships and contracts based on the threat and stigma

of pending litigation. The Defendants did so, and continue to do so, in order to leverage and coerce settlement monies out of the Plaintiffs in light of the bankruptcy filed by the Pursuit GP, despite the fact that the Defendants are aware that there is no factual or legal basis for asserting that the Plaintiffs herein owe them any money.

## FIRST COUNT – ABUSE OF PROCESS

35. At all relevant times, and continuing through the present date, the Defendants used and continue to use the legal process of the Stamford Lawsuit against the Plaintiffs in an improper manner, to gain a collateral advantage extraneous to the merits of the Stamford Lawsuit, and to accomplish a purpose for which lawsuits commenced in the Connecticut Superior Court were not designed.

36. At all relevant times, and continuing through the present date, the Defendants used and continue to use the legal process of the Delaware Lawsuit against the Plaintiffs in an improper manner, to gain a collateral advantage extraneous to the merits of the Delaware Lawsuit, and to accomplish a purpose for which adversary proceedings commenced in the Delaware Bankruptcy Court were not designed.

37. As a result of the Defendants' abuse of process in relation to the Stamford Lawsuit and the Delaware Suit, the Plaintiffs have suffered damages and continue to suffer damages, including but not limited to legal fees and costs related to defending the Stamford Lawsuit and Delaware Lawsuit, as well as lost income, profits and business and corporate opportunities as a result of being unable to maintain or solicit investors or engage in other beneficial business relationships and contracts based on the threat and stigma of pending litigation created by the Stamford Lawsuit and the Delaware Lawsuit.

## **SECOND COUNT – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTATIONS**

38. At all relevant times, a business relationship or an expectation of a business relationship existed between the Plaintiffs and actual and potential investors in the Plaintiff entities.

39. At all relevant times, the Defendants knew of the existence of these business relationships and expectancies.

40. At all relevant times, the Defendants intentionally interfered with such business relationships and expectancies by suing the Plaintiffs in an effort to interfere, inhibit and obstruct the Plaintiffs' ability to solicit investors or operate the Plaintiff entities based on the threat and stigma of pending litigation.

41. As a result of the Defendants' interference and aforesaid conduct, the Plaintiffs have suffered damages and continue to suffer damages, including but not limited to legal fees and costs related to defending the Stamford Lawsuit and Delaware Lawsuit, as well as lost income, profits and business and corporate opportunities as a result of being unable to maintain or solicit investors or engage in other beneficial business relationships and contracts based on the threat and stigma of pending litigation created by the Stamford Lawsuit and the Delaware Lawsuit.

## THIRD COUNT
## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")

42. The Plaintiffs repeat and re-allege the foregoing paragraphs 1-41 as if set forth fully herein.

43. The Defendants are "persons" within the meaning of Connecticut Unfair Trade Practices Act, Connecticut General Statutes ("C.G.S.") § 42-110(a)(3).

44. The Defendants participation in PCM as limited partners, and their subsequent commencement and continued prosecution of the Stamford Lawsuit, constituted the engagement of "trade" or "commerce" in Connecticut as defined in C.G.S. § 42-110(a)(3).

45. All of the aforesaid conduct of the Defendants constitutes unfair acts and/or deceptive trade practices in the conduct of trade or commerce.

46. These unfair acts and deceptive trade practices by the Defendants offend public policy, are immoral, unethical, oppressive or unscrupulous.

47. As a result of all the foregoing, the Plaintiffs have incurred an ascertainable loss, including money damages.

48. By virtue of all the aforesaid conduct of the Defendants, the Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees under C.G.S. § 42-110g.

49. The Plaintiffs have mailed a copy of this complaint to the Attorney General and the Commissioner of Consumer Protection pursuant to C.G.S. § 42-110g.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing, the Plaintiffs respectfully request the following relief against each of the named Defendants herein:

A. Compensatory damages;

B. Punitive damages pursuant to C.G.S. § 42-110g;

C. Attorneys' fees pursuant to C.G.S. § 42-110g;

D. Prejudgment interest;

E. Post-judgment interest;

F. Such other relief which, in law or equity, the Court may award.

THE PLAINTIFFS,

By: _____
Sabato P. Fiano (CT18879)
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard, 7th Floor
Bridgeport, CT 06604
Tel: (203) 332-5791
Fax: (203) 333-1489
Juris No. 069695
Email: sfiano@znclaw.com